

*Ilana Haramati*
*Partner*
Direct (646) 860-3130
Fax (212) 655-3535
ih@msf-law.com

August 23, 2022

**VIA ECF**

Hon. Hector Gonzalez
U.S. District Court, E.D.N.Y.
225 Cadman Plaza East
Brooklyn, NY  11201

      Re:    *United States v. Anthony Zottola, et al.,* **18-cr-609 (HG)**

Dear Judge Gonzalez:

      We represent defendant Anthony Zottola in the above-referenced matter.  We write to respectfully request that the Court deny the government's motion to quash the trial subpoena *duces tecum* served on Salvatore Zottola (the "Subpoena"), and instead order compliance with the subpoena.[1]

      The Subpoena (which is mirrored on the "if, as, and when" subpoenas that the government routinely serves on criminal defendants during trial in anticipation of their potential testimony) requests documents falling into three basic categories: (1) Salvatore Zottola's memorializations (written or otherwise recorded) of evidence or information involving the violent incidents at issue for trial; (2) communications regarding those same events and his planned testimony addressing them; and (3) business records or public documents involving some of his expected testimony.  Each of these categories easily satisfy the *Nixon* test.  *See United States v. Nixon*, 418 U.S. 683 (1974) (interpreting Rule 17(c) to require a subpoena to "clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity.").[2]

      First, the requested material specifically relates to Mr. Zottola's memorialized statements related to the allegations in the Indictment, or third-party communications he had about the alleged incidents, or business records that are relevant at trial. The requests are thus relevant and specific as per *Nixon*.[3]

      The requested material is also admissible.  Salvatore Zottola's memorializations, including notes, recordings and communications, of his perception and investigation of the violent incidents against

---

[1] The arguments herein apply equally to the subpoenas to Salvatore Zottola and to his former attorneys. Notably, prior to the government's motion to quash, we had conferred with the attorney who agreed to produce any materials in his possession responsive to the subpoena.

[2] While the Subpoena satisfies the *Nixon* standard, a lower threshold is applicable to trial subpoenas served by criminal defendants.  *See United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008) ("[*Nixon*] standard is inappropriate where production is requested by (A) a criminal defendant; (B) on the eve of trial; (C) from a non-party; (D) where the defendant has an articulable suspicion that the documents may be material to his defense"; "A defendant . . . need only show that the request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive") (citation omitted).

[3] The Subpoena's specific requests tailored to documented information about allegations in the Indictment and related business or public records contrast to *United States v. Maxwell* in which an overbroad subpoena sought a victim's diary prior to meeting the defendant, which did not address the defendant or co-conspirator.  *United States v. Maxwell*, 2021 WL 2292773, at *2 (S.D.N.Y. June 4, 2021).

himself and his family are presumptively admissible as either present sense impressions or, to the extent memorialized following a violent or surprising incident, excited utterances. *See*, *e.g.*, *Okoroafor v. City of N.Y.*, No. 07-CIV-9387 (DAB), 2013 WL 5462284, at *2 (S.D.N.Y. Sept. 25, 2013) (present-sense impression is admissible "where the note describes an event personally perceived by the declarant and which is made contemporaneously or immediately after the event described."); *United States v. Mejia-Valez*, 855 F. Supp. 607, 614 (E.D.N.Y. 1994) ("The two conditions for the application of th[e excited utterance] exception are that there has been a startling event and that the offered statements were made during the period of excitement, and in reaction to that event.") (quotation marks and citations omitted). Also, to the extent that Mr. Zottola recorded statements relevant to issues at trial; made or adopted them from personal knowledge when the matter was fresh in his memory; and cannot recall well enough now (four or five years later), the recorded statements may be read into evidence and received as an exhibit offered by the defense. *See* F.R.E. 803(5). We have a good faith basis to believe that Salvatore Zottola is in possession of such materials based on the NYPD interview report produced as 3500-SZ-19, in which Salvatore Zottola stated that "he documented all the incidents where his father [was] attacked, or any suspicious activities." 3500-SZ-19 at 1. To date, however, the government has only produced a very limited set of such materials, including two recordings (one of which is approximately 30 seconds long), and a few pages of handwritten notations—the majority of which it produced just today attached as Exhibit C to its motion to quash.

The government's motion also confirmed that Salvatore Zottola has made numerous additional recordings that remain unproduced. These recordings apparently capture Salvatore Zottola's statements, as well as those of his sister and others. According to the government, these unproduced materials related to Salvatore Zottola's lawsuits attempting to dissolve the Zottola family real estate businesses—a centerpiece of the government's criminal case against Mr. Zottola—in the wake of Mr. Zottola's arrest. *See* Gov. Mot. at 2 n.2. Indeed, Salvatore Zottola has sued both Mr. Zottola and his sister Deborah, seeking liquidation of the Zottola family real estate business. Strikingly these civil suits mirror a transaction that the government has proffered as a potential motive in the criminal case against Anthony Zottola: an alleged $27 million offer to liquidate the real estate business, in which Mr. Zottola was allegedly interested while his family members were not, allegedly stymying any such deal. Salvatore Zottola's civil suits are thus clear evidence of his bias in testifying against his brother (who remains a one third owner of the family real estate business). As such, any recordings or other memorializations he made with respect to the real estate business or the lawsuits are both relevant and admissible. *See United States v. Seabrook*, No. 16-CR-467, 2017 WL 4838311, at *3 (S.D.N.Y. Oct. 23, 2017) ("The prohibition against [seeking] impeachment evidence prior to trial does not extend to proof tending to establish bias or motive to fabricate, which is almost always relevant and never collateral."); *Friedman v. Swiss Re Am. Holding Corp.*, 643 F. App'x 69, 72 (2d Cir. 2016) ("statements were nonhearsay, as Friedman did not seek to introduce them for their truth, but instead to show bias on the part of Wieland.").[4]

Documents regarding the locations of machines maintained by Salvatore Zottola's gambling business are also admissible. Presumably, to ensure that the gambling machines are regularly serviced, and funds are routinely collected, Salvatore Zottola, as an agent of the business, records and maintains a

---

[4] The government's motion only emphasizes the import of the Subpoena. The government simultaneously acknowledges that additional recordings are in Salvatore Zottola's possession, but seeks to avoid production by resisting obtaining copies. The government should not be permitted to thwart Mr. Zottola's efforts to obtain relevant and admissible materials that plainly exist by seeking to quash the Subpoena and preventing Mr. Zottola from obtaining these materials directly from the witness.

list of the machines' locations.  That would be admissible under the business record exception under FRE 803(6).  Documents regarding any firearm permits are likewise admissible under the public records exception to the hearsay rule.  *See, e.g., United States v. Blunt*, No. 16-CR-050-2, 2017 WL 6527148, at *2 (M.D. Pa. Dec. 21, 2017) ("a driver's license is an admissible public record in accordance with Federal Rule of Evidence 803(8)").

Finally, to the extent the Court construes aspects of the Subpoena as requesting impeachment material, that is proper under *Nixon* as well.  While, some courts have found that production of impeachment material pursuant to subpoena is not required "in advance of trial . . . impeachment evidence can be obtained by means of a Rule 17(c) subpoena at trial."  *Seabrook*, 2017 WL 4838311, at *2 (quotation marks and citations omitted).  Indeed, some courts, when faced with a looming trial date, require production of impeachment materials pursuant to Rule 17(c) in advance of trial where, as here, the "witness, whose general testimony is already known, is scheduled to testify."  *United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988); *accord Tucker*, 249 F.R.D. at 66 (granting subpoena where "[t]here is no doubt that Tucker intends to use information gleaned from these recordings solely to impeach the cooperators. Impeachment of the cooperators is clearly material to Tucker's defense.").[5]

Respectfully submitted,

_____/s/ IH_____
Henry E. Mazurek
Ilana Haramati

*Counsel for Defendant Anthony Zottola*

cc:   Counsel of record (*via ECF*)

---

[5] Because the government for the first time conceded the existence of further recordings made by Salvatore Zottola, thus raising unanticipated issues in this briefing, Mr. Zottola respectfully requests leave to submit this three-page letter brief.