

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JAM:KCB/EJD/DEL/AMR  *271 Cadman Plaza East*
F. #2018R01984  *Brooklyn, New York 11201*

September 2, 2022

By E-mail and ECF

The Honorable Hector Gonzalez
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   United States v. Shelton, et al.
               Criminal Docket No. 18-609 (S-3) (HG)

Dear Judge Gonzalez:

      The government respectfully submits this letter in response to defendant Anthony Zottola's supplemental motion in limine to admit text message correspondence. See ECF No. 464 ("Def Mot."). Because the defendant fails to explain any basis supporting his own admission of these messages, the Court should deny the motion.

      First, the defendant moves to preclude the government from "introducing expert or opinion testimony that seeks to interpret the coded Shelton-Zottola conversations for the jury." Def. Mot. 1-3. The government does not intend to do so in its case in chief through testimonial witnesses, but will of course argue the meaning of those messages in summation, asking the jury to draw inferences of the coded text messages in evidence, alongside other admitted evidence in the case.[1] And although the defendant asserts that the government "cannot even introduce testimony interpreting specific code words repeated throughout the text messages, such as 'actor,' 'director,' 'taco,' and 'coffee,' among others," Def. Mot. 3, the government can, of course, reference the jury to repeated uses of the same code and make arguments from that, without providing interpretation through testimonial witnesses.

      Second, the defendant asserts that "[t]he government will seek to interpret the coded Zottola-Shelton messages by contextualizing them among other selected

---

[1] The government, however, reserves its right to do so should defense counsel open the door on cross-examination or in a rebuttal case.

contemporaneous communications Shelton had with others; Mr. Zottola is entitled to do the same by introducing additional text messages sent or received by Shelton in this same timeframe as non-hearsay." Def. Mot. 4. The defendant misunderstands the rules of evidence. As the government detailed at length in its motions in limine, the government intends to admit a series of text message communications pursuant to the Federal Rules of Evidence—including those governing statements of defendants and co-conspirators, statements against penal interest, statements offered not for their truth but for their effect on the listener, questions or commands generally not constituting statements, or statements that otherwise place admissible statements into context. See Gov't Mots. in Limine, ECF No. 400, at 4-7.

In contrast, Zottola has identified no rule of evidence permitting him to admit the text messages he seeks to introduce. See ECF No. 464, Ex. 2. As an initial matter, Zottola does not argue that the government has failed to introduce portions of his own conversations with co-conspirator Bushawn Shelton. Rather, Zottola seeks to introduce conversations between Shelton and other individuals—despite identifying no hearsay exception and providing no foundation to do so. See id. Specifically, in Exhibit 2, Zottola has highlighted portions of text messages between himself and Shelton, which are included in government exhibits as statements by a defendant and co-conspirator in furtherance of the conspiracy in accordance with the Federal Rules of Evidence, and seeks to append conversations between Shelton and other individuals for whom Zottola does not even attempt to identify a hearsay exception allowing their admissibility.[2] Zottola attempts to justify his attempt to introduce inadmissible hearsay statements between Shelton and other individuals by asserting that it provides "context" for the conversation between himself and Shelton. But none of the cases cited by Zottola allow for the wholesale introduction of other people's conversations under the guise of "context." Rather, each of the cases cited by Zottola pertain to portions of conversations admissible as defendant or co-conspirator statements. See United States v. Barone, 913 F.2d 46, 49 (2d Cir. 1990) (identifying no error in admission of recorded call between defendant and informant where statements by informant during the call with the defendant "establish[ed] a context for the recorded statements of the accused"); United States v. Walker, No. 99-CR-379 (BSJ), 1999 WL 777885 (S.D.N.Y. Sept. 29, 1999) (same, as to recording between the defendant and a cooperating inmate); United States v. Torres, 435 F.

---

[2] The government has already marked as an exhibit and seeks to admit the messages between the individual identified as "Mur B" in Exhibit 2—Branden Peterson, a charged co-defendant of Zottola's—and an additional text message between Shelton and Zottola not highlighted in Exhibit 2 to the defense motion. The government attaches as Government Exhibit A the highlighted portion of the defense Exhibit 2 that identifies the additional messages that the government believes should be admitted as co-conspirator statements under the Federal Rules of Evidence. In particular, the evidence at trial will establish that Peterson, a co-defendant who has already pled guilty, worked with Shelton in executing the murder-for-hire scheme, thus rendering their conversations regarding the plot admissible. For the same reason identified in the government's September 2, 2022 letter, the government respectfully requests leave to file its exhibits to this letter under seal. See ECF No. 473, at 4.

Supp. 3d 526, 533 (S.D.N.Y. 2020) (identifying portion of a call under Federal Rule of Evidence 801(d)(2)(E) as co-conspirator statements and other testimony as co-conspirator statements or, in the alternative, to provide context "or render other [admissible] statements intelligible").

United States v. Perez, No. 05-CR-441 (PKL), 2005 WL 2709160 (S.D.N.Y. Oct. 20, 2005), and United States v. Midyett, 256 F.R.D. 332 (E.D.N.Y. 2009), heavily cited by Zottola, fare no better. See Def. Mot. 6-7. Perez authorized the government to admit a conversation between a co-conspirator and an informant pursuant to Federal Rule of Evidence 801(d)(2)(E) and, because the co-conspirator's statements were properly admitted pursuant to that rule, the informant's statements back and forth with the co-conspirator on the same recording were necessary to place the co-conspirator's statements on the recordings in context. Perez, 2005 WL 2709160, at *2 ("Because the informant's statements are offered solely to place in context [the co-conspirator's] statements, which themselves are admissible non-hearsay pursuant to Rule 801(d)(2)(E) as statements by a co-conspirator of a party during the course and in furtherance of the conspiracy, the informant's statements are not hearsay."). But Zottola cannot benefit from this hearsay exception to introduce conversations between Shelton and other people because—even if he could establish that those conversations were made during and in furtherance of a conspiracy—that rule only allows such statements to be offered against an opposing party. See Fed. R. Evid. 801(d)(2). He cannot offer them on behalf of himself.

Midyett upholds this principle. There, the government attempted to introduce a video recording containing statements of the defendant and an informant (the "CI") and a separate conversation between the CI and an unidentified female (the "UF") on the same video. See 256 F.R.D. 332. The defendant challenged the admissibility of the latter, and the Court determined that the separate conversation between the CI and the UF did not fall within any hearsay exception and, thus, was inadmissible. Id. As particularly relevant here, Judge Matsumoto in Midyett determined that although the government asserted that the conversation between the CI and the UF was purportedly being offered as non-hearsay context for the admissible conversation between the informant and the defendant, the government was in fact offering it for its truth:

> The court also finds that the Drug Conversation between the CI and the UF is inadmissible hearsay. Indeed, notwithstanding the government's bald contention that the Drug Conversation is simply not hearsay, one of the non-hearsay purposes for which the government proffers such evidence supports the court's finding that the Drug Conversation is, in fact, being offered for the truth of the matter asserted and thus, is inadmissible hearsay. Namely, the government asserts that the Drug Conversation is being proffered to "make clear why Midyett and the CI agree on $42 as the price for the fourteen crack vials." Considering, however, that the Drug Conversation proves the price charged by Midyett for the crack cocaine he allegedly sold and for which he is charged with distributing on December 7, 2006, the court is hard pressed to accept the

3

>government's contention that the Drug Conversation is not being offered for the truth of the matter asserted, i.e., that the UF was correct in informing the CI that Midyett charged "three bucks" for each vial of crack cocaine. Thus, as it is being offered for the truth of the matter asserted, the Drug Conversation constitutes hearsay and is inadmissible.

Id. (internal citations omitted). The same is true here. Zottola asserts the statements of Shelton and other individuals are not being offered for their truth. However, to support his theory of the relevance of those conversations, an analysis of their content and belief in the truth of the matters asserted in those statements is necessarily required, i.e., that Shelton was in fact engaging in business transactions with other individuals. Because Zottola himself cannot offer the Shelton/other participant conversations under Federal Rule of Evidence 801(d), or any other rule, and because they are plainly not hearsay context for otherwise admissible evidence as found by the other courts considering this issue, the statements should be precluded. See id. (finding Barone and its progeny "wholly inapplicable to the admissibility of the CI-UF conversation").

The portion of Midyett cited by the defense is misleading. See Def. Mot. 7-8. That portion of the opinion did not deal with admissibility, but rather, assuming that that the conversation between the CI and the UF was "not inadmissible hearsay"—which Judge Matsumoto found it was—whether the conversation was even relevant. As to relevance, Midyett outlined that, in addressing the admissibility of "evidence offered not for its truth . . . [but] as relevant background," courts should consider: (i) whether the background evidence "contribute[s] to the proof of the defendant's guilt"; (ii) "how important it is to the jury's understanding of the issues"; (iii) "[c]an the needed explanation of background be adequately communicated by other less prejudicial evidence or by instructions"; and (iv) "[h]as the defendant engaged in a tactic that justifiably opens the door to such evidence to avoid prejudice to the government." Id. Moreover, in considering the potential for unfair prejudice by the introduction of such testimony, courts consider: (i) "[d]oes the declaration address an important disputed issue in the trial" and whether "the same information [can be] shown by other uncontested evidence"; (ii) whether "the statement was made by a knowledgeable declarant so that it is likely to be credited by the jury"; (iii) whether the "declarant will testify at trial, thus rendering him available for cross-examination" and, if so, "will he testify to the same effect as the out-of-court statement"; and (iv) whether "curative or limiting instructions effectively protect against misuse or prejudice." Id.

As in Midyett, "virtually every variable weighs against the admission" by defendant Zottola of co-conspirator Shelton's conversations with other people. First, Shelton's conversations with other people purportedly not being offered for their truth provide no import to the jury's understanding of the issues in this case. Indeed, even considering the statements for their truth, they do very little as they are plainly irrelevant. Zottola asserts they are "exculpatory" but provides no explanation for how that is the case. Rather, Zottola asserts that the additional exchanges he highlights "reflect" that Shelton "carried on other business transactions not connected to a murder-for-hire plot." Def. Mot. 5. Indeed, certain of the

4

conversations identified in Exhibit 2 have not even been reviewed by the government because they were not identified as responsive to the search warrants in this case—plainly exposing their irrelevance.[3] But even on their face, they pertain to different topics during different time frames. As Exhibit 2 highlights, Shelton is not texting defendant Zottola while texting others. Rather, Shelton and Zottola exchange messages regarding Zottola pressuring Shelton to hurry up; twenty minutes later Shelton exchanges messages with another individual regarding meeting with that other individual; five hours later, Shelton exchanges text messages with an individual whom Zottola does not even attempt to make a relevance showing. At approximately 8:30 p.m., Zottola texted Shelton, "U good. Didn't talk to you today. Just seeing how fishing going." Thus, far from establishing some sort of interplay or context, Shelton declined to speak to Zottola for most of the day and in fact informed him that he had "had to leave everything behind today." See Ex. 2; Gov't Ex. 1209. Indeed, their non-contact on the day in question is further highlighted by a conversation between Zottola and another phone often used by Shelton, but which a user purporting to be Takeisha Shelton (Bushawn Shelton's wife) used on that particular date. See Gov't Ex. B. There, Zottola reached out at approximately 9:37 p.m. asking "is my friend OK because I'm trying to reach him all day and no answer," to which the user purporting to be Takeisha Shelton responded, "[e]arlier he left work earlier because he said he had an emergency changed clothes and went back out," to which Zottola responded, "OK I've been trying to call all day to see if our big job is going. but as long as he's OK thank you have a good night," and then, a few minutes later, "I just want to make sure he's OK we don't just work together he's a friend of mine." Id. As to Shelton and Zottola's subsequent conversation regarding Shelton being with the "blue joint[4] all day today from the afternoon . . . I left work early today for this," evidence from one of the tracking devices connected to Shelton shows that the tracking device was stopped in the vicinity of Shelton's residence on March 24, 2018, and reactivated in the vicinity of the Bronx at approximately 7 p.m. on March 28, 2018, where it began registering to locations associated with Sylvester and Salvatore Zottola.

As to the remainder of the Midyett factors, they all support disallowing the inadmissible hearsay Zottola seeks to introduce. Regarding the "needed explanation of background be adequately communicated by other less prejudicial evidence or by instructions," Zottola has already, and can at trial, point to Shelton's sending and receiving approximately 117,000 text messages during the relevant time period, and the government will readily concede—and even elicit, should the defense want—that Shelton also used his phones to speak about other matters. That Zottola seeks to introduce the content of those communications only further highlights his attempts to admit inadmissible hearsay for its truth.

---

[3] Should the Court for some reason admit these inadmissible and irrelevant hearsay conversations between Shelton and other people, the government should be permitted to introduce why it did not identify these conversations as responsive to the search warrant or as relevant in this case.

[4] Salvatore Zottola drove a blue car at the time.

5

Zottola makes no showing that the government has "engaged in a tactic that justifiably opens the door to such evidence to avoid prejudice," given that he does not suggest that the government has unfairly precluded portions of his own conversations with Shelton. And, of course, in considering whether "the statement was made by a knowledgeable declarant so that it is likely to be credited by the jury," neither Shelton nor the other participants of the conversations with Shelton are expected to testify at this trial, further highlighting how unreliable these conversations are, particularly when no participant will be subject to cross-examination. Finally, as Judge Matsumoto found in Midyett, "a curative and limiting instruction would have little to no effect in eliminating the risk that the jury will improperly consider the [inadmissible hearsay conversation] for its truth." 256 F.R.D. 332. Accordingly, as to relevance, the risk of unfair prejudice and confusion significantly outweighs any probative value of the proffered text message conversations between Shelton and other people for the proffered non-hearsay purpose of providing context.

Finally, Zottola's citation to Federal Rule of Evidence 106 does not provide a basis to admit other individuals' conversations that fall within no hearsay exception. See Def. Mot. at 6 n.6. Under that rule, the "doctrine of completeness," provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. The Second Circuit has "interpreted [the doctrine of completeness] to require that a statement be admitted in its entirety when this is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact, or to ensure a 'fair and impartial understanding' of the admitted portion." United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) (quoting United States v. Capaldo, 402 F.2d 821, 824 (2d Cir. 1968) (collecting cases)). This is true "even though a statement may be hearsay." United States v. Coplan, 703 F.3d 46, 85 (2d Cir. 2012) (quoting United States v. Kopp, 562 F.3d 141, 144 (2d Cir. 2009)). The doctrine of completeness "does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." Kopp, 562 F.3d at 144. The statements Zottola seeks to introduce achieve none of these aims and the Court should reject them for what they are—attempts to offer irrelevant, inadmissible hearsay.

"The rule of completeness is violated only where admission of the statement in redacted form distorts its meaning or excludes information substantially exculpatory of the declarant." United States v. Thiam, 934 F.3d 89, 96 (2d Cir. 2019). That is not this case, where the defendant concedes that the government has fairly included his own correspondence with Shelton. See Def. Mot. at 1 n.1. Rather, courts have uniformly rejected attempts to introduce separate conversations between separate individuals under the guise of the doctrine of completeness. See, e.g., United States v. Aungie, 4. F4th 638, 647 (8th Cir. 2021) (rejecting defendant's attempt to "introduce specific text messages separate from the text conversations admitted" because "the excluded texts were unnecessary to complete the context of the included communications because they were not parts of the same conversation. The rule of completeness serves as a fairness mechanism to ensure the jury is not misled by only admitting part of a writing or recorded statement"); see also United States v. Blake, 195 F. Supp. 3d 605

6

(S.D.N.Y. 2016) (holding that the completeness doctrine "is not a mechanism to bypass hearsay rules for any self-serving testimony" and rejecting defendant's attempt to offer her own statements "offering an alternative theory of the evidence" because they were unnecessary to "clarify or explain her statements" appropriately offered by the government under the Federal Rules of Evidence).

If Zottola seeks to "elucidate the meaning of the coded Zottola-Shelton messages" as he asserts, see Def. Mot. at 5, he should testify subject to cross-examination. See Blake, 195 F. Supp. 3d at 611 (in denying rule of completeness argument, Court determined that the defendant "may, in presenting her case, testify subject to cross-examination about her own knowledge relating to the admitted statements, provided such testimony is not unduly speculative or otherwise barred under evidentiary rules," but rejecting defendant's attempt to offer testimony otherwise barred under Federal Rule of Evidence 802).

Because courts have categorically and uniformly rejected the same arguments being made by Zottola, the Court should similarly reject his attempts to offer inadmissible, irrelevant hearsay here.[5]

---

[5] Should the Court disagree, the Court should require Zottola to provide the government with the remainder of his purportedly exculpatory messages that he claims the government did not "select" immediately, given that he misrepresented to the Court that certain messages in Exhibit 2 were not included in the government's exhibits, when they in fact were. Such a procedure would also ensure that the trial can proceed expeditiously, rather than cause delay each time the defendant seeks to introduce self-serving messages so that the government can evaluate whether they fairly represent what they purport to.

## CONCLUSION

      For the reasons set forth above, the government respectfully submits that the defendant's motion is without merit and should be denied.

Respectfully submitted,

BREON PEACE<br>United States Attorney

By:     /s/
                Kayla C. Bensing
                Devon E. Lash
                Emily J. Dean
                Andrew M. Roddin
                Assistant U.S. Attorneys
                (718) 254-7000

Enclosures

cc:     Clerk of Court (HG) (By ECF) (without enclosures)