

*Ilana Haramati*
*Partner*
Direct (646) 860-3130
Fax (212) 655-3535
ih@msf-law.com

September 3, 2022

**VIA ECF**

Hon. Hector Gonzalez
Eastern District of New York
225 Cadman Plaza East
Courtroom 6A S
Brooklyn, NY  11201

      Re:    *United States v. Anthony Zottola, et al.,* **18-cr-609 (HG)**

Dear Judge Gonzalez:

      We represent defendant Anthony Zottola in the above-referenced matter.  We write to oppose the government's motion to preclude or limit cross examination of its witnesses on their criminal histories or misconduct.  *See* ECF Doc. 462.  This evidence is both relevant to the witnesses' credibility, bias, and in the case of the government's law enforcement witnesses, the integrity of their investigations here.  There is simply no basis to preclude cross examination of 36 government witnesses' prior misbehaviors, virtually wholesale.  The Court should decline to do so, and deny the government's motion.

**I.    The Full Scope of Cooperating Witnesses' and Unindicted Co-Conspirators' Criminal Histories, Both Charged and Uncharged, is Relevant and Admissible to Show Bias**

      The government seeks to preclude cross examination of its cooperating witnesses (CW-1 and CW-2) regarding aspects of their criminal histories, including past incidents of domestic violence, arguing that they "do not concern [the cooperators'] character for truthfulness or untruthfulness."  Gov. Mot. at 4; *see also id.* at 6.[1]

      Contrary to the government's argument, the full panoply of the cooperators' criminal histories is relevant and admissible to show their bias.  In addition to their participation in the crimes alleged in this case and their cooperation agreements, the cooperators' checkered past is probative to their incentives to testify on behalf of the government.  The jury cannot adequately assess their bias without evidence of the cooperators' full criminal histories. Such evidence is admissible accordingly.  *See, e.g., United States v. Figueroa*, 548 F.3d 222, 229-30 (2d Cir. 2008) (district court "erred as a matter of law" in curtailing cross

---

[1] [redacted] *See* Gov. Mot. at 5.  At this time, Mr. Zottola does not intend to cross examine on this point, unless it becomes relevant during the course of trial.

examination regarding bias: "The Supreme Court has held that impeachment for bias is admissible . . . even when the impeachment material is not independently admissible under Rule 608 as "concerning the witness's character for truthfulness or untruthfulness." Here, . . . the purpose of the proposed line of cross-examination was not to show the witness's character for truthfulness or untruthfulness; it was to impeach the witness for bias.") (quoting *United States v. Abel*, 469 U.S. 45, 51, 55-56) (other citations, quotation marks and modifications omitted).

The same is true of the government's motion to preclude cross-examination regarding the criminal history of an unindicted co-conspirator, ███████, who is testifying for the government. The government's trial exhibits, including most importantly its exhibits of text messaged it seeks to admit at trial as "co-conspirator" statements under the FRE 801(d)(2)(E) hearsay exception, clarify that the government considers ███████ an unindicted co-conspirator in the charges. Although the government has apparently decided not to charge ███, his criminal past is nonetheless directly relevant to is incentive to cooperate with the government here. As with the cooperating witnesses, ███ criminal history is thus probative of bias and admissible on that basis as well. *See, e.g., Abel*, 469 U.S. at 46 ("The proffered testimony with respect to Mills' membership in the gang sufficed to show potential bias in respondent's favor, and such extrinsic evidence is admissible to show bias."); *see also United States v. James*, 609 F.2d 36, 46 (2d Cir.1979) ("[B]ias of a witness . . . admissible to prove that a witness has a motive to testify falsely.") (internal quotation marks and citations omitted).[2]

## II. Lay Witnesses' Criminal Histories Are Similarly Admissible

The government likewise moves for a broad ruling precluding any cross-examination regarding a number of its lay witnesses' criminal histories. *See* Gov. Mot at 6-8. As an initial matter, depending on their testimony, these witnesses' past crimes may become relevant for their impeachment. After all, determinations of relevance and admissibility are highly fact specific. *See, e.g., United States v. Klein*, No. 16-CR-442 (JMA), 2017 WL 839765, at *1 (E.D.N.Y. Mar. 1, 2017) (deferring ruling on evidentiary questions, "involve a fact-specific inquiry . . . until the issues arises during trial" as "[t]he admissibility of the challenged statements will turn on the manner in which the trial progresses").

For example, the government seeks to preclude cross-examination of two lay witnesses' histories of ███████████ (both ███████████). *See* Gov. Mot. at 7-8. To the extent these witnesses have ███████████ however, that may have impacted their ability to accurately perceive the facts to which they are testifying—directly relevant to credibility.

The government also seeks to preclude admission of ███████████ ███████████

---

[2] Although not addressed in the government's motion, ███████ past criminal activity is admissible for the same reason. Based on the government's trial exhibits, it apparently considers ███, a government witness, to be an unindicted co-conspirator as well. ███ criminal history, including his longstanding participation in narcotics trafficking, is likewise admissible and probative of bias.

125 Park Avenue, 7th Floor, New York, NY 10017 | Phone (212) 655-3500 | Fax (212) 655-3535 | meisterseelig.com

Finally, the government also relies heavily on the age of several witness' convictions, repeatedly arguing that convictions are inadmissible if they "fall outside of the 10-year time restriction set forth in Rule 609(b)." Gov. Mot. at 8; *see also id.* at 7. That, however, is not the rule. FRE 609 is not a wholesale bar on admission of convictions more than 10 years old. Instead, such convictions are admissible if their "probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). Without knowing precisely the contours' of these government witnesses' testimony, the fact-intensive analysis that the rule requires is virtually impossible at this stage. The Court should deny the government's motion at this juncture on this basis as well.

### III. Law Enforcement and Government Expert Witnesses' Misconduct is Admissible

The government spends most of its motion seeking to bar the defendants from cross-examining 28 law enforcement witnesses, and one expert witness regarding their past misconduct. According to the government, their witnesses' lengthy histories of misbehavior are irrelevant to their credibility and thus inadmissible.

That argument misses the mark. The Second Circuit has held that law enforcement agents' past misconduct may be highly relevant to their credibility—irrespective of the misconduct's age. *See United States v. Kiszewski*, 877 F.2d 210, 215-16 (2d Cir. 1989) (vacating conviction where defendant did not have opportunity to inspect and raise law enforcement witnesses' history of misconduct, dating back more than ten years, as "[i]mpeachment of a witness can make the difference between acquittal and conviction"); *accord United States v. Thoms*, No. 10-CR-069-JWS-JDR, 2013 WL 3448080, at *2 (D. Ala. July 9, 2013) ("reliable evidence of the law enforcement officer's misconduct in unrelated cases is admissible to impeach the officer's credibility"); *see also Milke v. Ryan*, 711 F.3d 998, 1016 (9th Cir. 2013) (granting habeas corpus relief for *Brady* violation in government's failure to disclose law enforcement "documented misconduct"). The government's case will rely heavily on law enforcement witnesses' testimony, indeed the government intends to call more than two dozen law enforcement witnesses. It is thus particularly important for the jury to assess the officers' credibility, which it cannot adequately do without a full view of their past malfeasance.

Moreover, the quality of the government's investigation throughout the 14-months of attacks on the victims is a live issue for trial. The government's law enforcement witnesses' documented history of shoddy investigation techniques and disciplinary infractions is thus relevant to assessing the integrity of the investigation here. *See, e.g., Kyles v. Whitley*, 514 U.S. 419, 446 n.15 (1995) ("When ... the probative force of evidence depends on the circumstances in which it was obtained . . . indications of conscientious police work will enhance probative force and slovenly work will diminish it."); *United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000) (vacating conviction where the court improperly instructed the jury "not to 'grade' the investigation," explaining: "[t]o tell the jury that it may assess the product of an investigation, but that it may not analyze the quality of the investigation that produced the product,

illogically removes from the jury potentially relevant information."). The full scope of law enforcement witnesses' disciplinary infractions is accordingly admissible on cross-examination.

The same is true of the government's DNA examiner's three prior instances of deviation from FBI protocol in testifying regarding her expert conclusions. *See* Gov. Mot. at 25-26. In each of the three instances, FBI examiner Tiffany Smith exaggerated the strength of her DNA conclusions. As the government recognizes, DNA evidence can only **compare** the relative likelihood that a DNA sample originated from a defendant to the likelihood that it originated from randomly selected other individuals whose DNA is contained in law enforcement's database. DNA evidence **cannot** evaluate the chances that the DNA **actually originated** from a specific individual. Of course, that distinction, while nuanced, means everything. Specifically (and wrongly) pinpointing a defendant as the source of a DNA sample is far more conclusive and powerful testimony than the equivocal likelihood ratios that DNA expert evidence can accurately reflect. Accordingly, Smith's prior improper expert testimony is highly relevant to the strength and veracity of her expert conclusions here. The Court should, therefore, permit cross-examination of her testimony on this point as well.

Finally, the government also repeatedly raises the age of several instances of law enforcement witnesses' misconduct to bar their admission. *See, e.g.,* Gov. Mot. at 10, 13. As with the government's lay witnesses, that is not a wholesale bar to their admission. They remain admissible so long as they are more prejudicial than probative.[3] The Court should, therefore, deny the government's motion.

Respectfully submitted,

/s/ IH
Henry E. Mazurek
Ilana Haramati

*Counsel for Defendant Anthony Zottola*

cc:   Counsel of record (*via ECF*)

---

[3] Because the defense just received notice of this *Giglio* material in the last week, we are in the midst of investigating many of the instances of misconduct. According, we seek leave of the Court to supplement the opposition to the government's motion once the defense investigations have progressed.