

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

KCB/EJD/DEL/AMR  　　　　　　　　　　*271 Cadman Plaza East*
F. #2018R01984　　　　　　　　　　　　*Brooklyn, New York 11201*

September 3, 2022

By E-mail and ECF

The Honorable Hector Gonzalez
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

　　　　　Re:　United States v. Zottola, et al.
　　　　　　　Criminal Docket No. 18-609 (S-3) (HG)

Dear Judge Gonzalez:

　　　　The government respectfully submits this letter in opposition to the defendant Alfred Lopez's motions in limine dated August 29, 2022 to preclude the government from relying on certain evidence at trial, namely: (1) certain content from Lopez's Instagram account and cell phone, and (2) text messages associated with Lopez (the "Lopez Motion").[1] See ECF Dkt. No. 469. Lopez claims these exhibits "would be in direct conflict with the Court's prior ruling on the issue of the admissibility of certain defendants alleged Bloods gang membership." Lopez Mot. 6. As a preliminary matter, at the August 10, 2022 pretrial conference, Judge Dearie recognized the "dynamic" nature of trial and specifically, that Your Honor may find that references to the Bloods "may be appropriate." See Aug 10, 2022 Tr. at 12-13. In any event, the government does not intend to admit GX 213(b) and GX 1504 and, thus, the motion as to those two exhibits is moot.[2] As to the remainder of the challenged exhibits, the government does not offer them to demonstrate Lopez's gang association but

---

[1] Lopez also challenges the presentation of certain statements made during the course of a law enforcement interview. The parties are attempting to reach an agreement on a revised version of this video, which will not be introduced during the first week of trial. Given this potential for resolution, the parties ask that the Court hold its decision in abeyance on Lopez's motion to preclude video of his interview with law enforcement.

[2] Should, however, the Court deem that Lopez's gang affiliation has become relevant at trial, the government intends to offer these exhibits.

rather for other permissible purposes described below. For that reason, the Court should deny Lopez's motion in limine with respect as to the social media and phone content. This evidence is highly probative and does not carry a risk of unfair prejudice.

I.      Challenged Exhibits

Lopez seeks to preclude the following exhibits, which the Government attaches hereto. See Ex. A.³

- GX213(c) is a photograph created on May 5, 2018, which depicts Lopez sitting in the front passenger seat of a grey-colored sedan consistent in appearance with the Ford Fusion used in the October 4, 2018 murder of Sylvester Zottola. The car's logo, which is visible on the steering wheel, appears to be the Ford logo. The body style, interior and door paneling indicates the car is a Ford Fusion.

- GX213(d) is a photograph created on June 9, 2018, which depicts Lopez sitting in the front driver seat of a grey-colored sedan consistent in appearance with the Ford Fusion used in the October 4, 2018 murder of Sylvester Zottola. The body style, interior and door paneling indicates the car is a Ford Fusion.

- GX213(e) is a "selfie"-style photograph created on September 4, 2018, which clearly depicts Lopez's face.

- GX213(f) contains an Instagram message sent on October 10, 2018 from Lopez to another Instagram user ("User-1"), in which Lopez provides his phone number. User-1 informed Lopez that User-1 broke his phone and needed Lopez's phone number.

  - GX 1502 depicts several contacts by name and number saved within the Lopez cell phone. They include contacts named "Biz," ▮▮▮▮▮ ▮▮▮▮▮▮▮▮ and "Mike the Buro" with listed phone numbers.

---

³       For the same reason identified in the government's September 2, 2022 letter, the government respectfully requests leave to file its exhibits to this letter under seal. See ECF No. 473, at 4. These materials are subject to a protective order. It is premature to release these messages before their admission at trial. While the government is sensitive to the need to minimize the amount of information that is filed under seal, see, e.g., United States v. Aref, 533 F.2d 72, 83 (2d Cir. 2008), sealing is warranted here because it is necessary to protect the privacy interests of testifying third-party witnesses. United States v. Amodeo, 71 F.3d 1044, 1048, 1050 (2d Cir. 1995).

      GX1503 comprises three photographs: one of a group of men created March 4, 2018, depicting, among others, Lopez ▮▮▮▮▮▮▮▮▮▮▮▮▮ and a photograph of six men, created June 5, 2017, including Lopez ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The third photograph depicts Lopez.

- GX1505 contains a June 27, 2017 text message with ▮▮▮▮ discussing a firearm.

- GX1506 contains an August 19, 2017 text message with ▮▮▮▮ discussing ▮▮▮▮ co-defendant Julian Snipe, or "Biz."

- GX1513(b) is a video Lopez takes on his phone depicting himself, which Lopez sent to ▮▮▮▮ via WhatsApp message on October 1, 2018, in a conversation marked at GX1513(a).

II.    Applicable Law

      Rule 401 of the Federal Rules of Evidence instructs that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Generally, relevant evidence is admissible and "[i]rrelevant evidence is not admissible." See Fed. R. Evid. 402. "[T]he district court has broad discretion to exclude evidence that is irrelevant . . . ." United States v. Edwards, 631 F.2d 1049, 1051 (2d Cir. 1980).

      Rule 403 permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, . . . or needlessly presenting cumulative evidence." The Advisory Committee Notes define "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. See Fed. R. Evid. 403, Adv. Comm. Notes. Further, the Advisory Committee has made clear that, "[i]n reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." Id.

III.    Challenged Exhibits from Lopez's Instagram Account and Cell Phone

      Lopez seeks to preclude the government from using certain photographs, videos and messages from his Instagram account and cell phone, arguing that these images and videos are "prejudicial and irrelevant," because they show Lopez's affiliation with the Gorilla Stone Bloods, specifically citing GX 213(c)-(f); GX 1502, 1503 and 1513(b). See Lopez Motion at

5-6. These exhibits are not intended to show Lopez's gang affiliation.[4] The government offers them to show (1) Lopez's connection to a Ford Fusion, the vehicle used in the murder of Sylvester Zottola, (2) his ownership and use of the account which posted the photos of the Ford Fusion and his phone number, (3) his use of a phone number that is relevant to the government's evidence in this case, and (4) his connection to certain co-conspirators and witnesses.

These exhibits are highly probative. Specifically, GX213(c) and GX213(d) show Lopez using a Ford Fusion in the months before the murder—the same make and model of the vehicle Lopez drove in murder. GX 213(e) is a selfie of Lopez, demonstrating his use of the social media account from which he was posting. GX213(f) contains Lopez's phone number, which the government will use to show his contacts with co-conspirators and his location before and during the murder. The government does not intend to elicit any gang-related evidence regarding these photographs.

GX1502 shows relevant contacts saved in Lopez's phone by alias and phone number, which establish his relationships with co-conspirators, including charged co-defendant Julian Snipe (also known as "Biz," a fact noted in the operative Indictment in this case), ███████████████████████████████████████ who the evidence will establish were close with co-defendant Bushawn Shelton and who participated in the murder-for-hire scheme, including ███████████████ recruitment of Lopez into the scheme; ███████████████████████████████; and "Mike the Buro," the FBI case agent. The exhibit is patently relevant and the defendant does not even attempt to argue that it is prejudicial.

GX1503 and GX1513(b) demonstrate Lopez's relationships with uncharged co-conspirators, with GX1503 comprising photographs of Lopez and co-conspirators in the year-and-a-half before the murder, and GX1513(b) being a video portion of a text message Lopez exchanges with ███████████████ in the days before Sylvester Zottola's murder—demonstrating his ownership over the phone and phone number that ties him to the Ford Fusion and homicide three days before the October 4, 2018 murder. These exhibits show Lopez's long association with co-conspirators involved in the plan to kill Sylvester Zottola and Salvatore Zottola, direct evidence that the government needs to prove its case and necessarily allowed to show the jury to "complete the story." See United States v. Reifler, 446 F.3d 65, 92 (2d Cir. 2006) (allowing "[e]vidence . . . to enable the jury to understand the complete story of the crimes charged . . ." (internal quotation marks omitted)); United States v. Pipola, 83 F.3d 556, 565-66 (2d Cir. 1996) (evidence of defendant's prior involvement with co-conspirators permissible to explain "how the relationship between [the defendant] and his

---

[4] As noted above, the government has agreed not to introduce GX 213(b) and GX 1504, which do pertain to the defendant's affiliation with the Bloods, subject to their becoming relevant at trial.

4

underlings evolved" and because it made defendant's subsequent robbery conspiracies with those individuals "more plausible"); United States v. Brennan, 798 F.2d 581, 589-90 (2nd Cir. 1986) (affirming trial court's decision in bribery case to admit government witness's testimony about uncharged bribes because the testimony helped explain to the jury how the illegal relationship between the defendant and the witness developed and that "[w]ithout this evidence the jury would have had a truncated and possibly confusing view of the respective roles played by [the defendant] and [the witness] and of the basis for the trust between [the defendant] and [the witness]"). Indeed, the government anticipates that Lopez will argue at trial that he had no relationship with Shelton and, thus, acted as an unknowing co-conspirator. These photographs show Lopez with ████████████████ both of whom were close to Shelton and active participants in the murder-for-hire plot.

Nor do these photographs and video carry any risk of unfair prejudice. Lopez's only argument as to prejudice is that photographs and videos may also show Lopez is a member of the Gorilla Stone Bloods. However, these photographs are being used for proper purposes and there are no obvious signs of gang membership depicted in these photographs or messages. That Lopez is wearing a red Ralph Lauren Polo baseball hat in GX213(d) or that Lopez and others are forming hand signs in one of the photographs in GX1503 are not noticeable sign of Bloods membership to a lay jury, and the government does not intend to elicit or argue to the jury that they are, unless that evidence becomes relevant throughout the course of the trial. As the Court's ruling currently stands, the government will not remark on the fact of Lopez's gang membership in its case-in-chief or summation. Thus, the probative value of this evidence is not outweighed by any prejudice.

IV.     Challenged Text Messages

Lopez also challenges the admission of certain messages, again arguing these messages are "irrelevant and highly prejudicial," namely GX1505 and 1506. Lopez Motion at 6. The Court should deny this motion as the messages illustrate Lopez's association with other members of the conspiracy and the fact of Lopez's access to guns is probative of his knowledge and absence of mistake in his participation in the murder-for-hire, which the government anticipates Lopez will challenge at trial.

These messages are relevant, probative and do not raise the danger of unfair prejudice. As an initial matter, both messages are with ████████████████ whose relationship with Lopez is not only relevant but highly probative of Lopez's joining of the conspiracy. Specifically, GX1505 and GX1506 indicate Lopez's long and close relationship with ████████—including, with respect to GX1505's reference to a gun, that they entrusted one another with illegal activity—which tends to explain why Lopez assisted in the October 4, 2018 murder of Sylvester Zottola. See, e.g., Reifler, 446 F.3d 92 (the government is permitted to show the jury evidence to "complete the story"). Moreover, the government anticipates that, at trial, Lopez will argue that he was unaware of the murder-for-hire plot and, at best, acted as an unwitting driver. Lopez's knowledge of, familiarity with and access to firearms is thus probative evidence of the October 4, 2018 shooting in which he

5

participated, and is not unduly prejudicial given the nature of the charges here—murder. <u>See</u> Fed. R. Evid. 404(b); 403. GX1506 additionally indicates Lopez's knowledge of Julian Snipe, or "Biz," whose involvement in the conspiracy will feature in the government's evidence at trial. There is nothing prejudicial about the text message, nor does Lopez point to any prejudice. Lopez's associations with charged and uncharged co-conspirators, as well as his access to and knowledge of firearms, are not unfairly prejudicial and are highly probative to the government's evidence at trial.

For the reasons set forth above, the government respectfully submits that the Lopez Motion is without merit and should be denied except as stated herein.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/
Kayla C. Bensing
Devon Lash
Emily J. Dean
Andrew M. Roddin
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of Court (HG) (By ECF)
       Defense Counsel of Record