

*Ilana Haramati*
*Partner*
Direct (646) 860-3130
Fax (212) 655-3535
ih@msf-law.com

September 26, 2022

<u>**VIA ECF**</u>

Hon. Hector Gonzalez
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Courtroom 6A S
Brooklyn, NY  11201

    Re: *United States v. Anthony Zottola, et al.*, 18-cr-609 (HG)

Dear Judge Gonzalez:

  We represent defendant Anthony Zottola in the above-referenced matter.  We write to respectfully renew our motion to admit as non-hearsay, text message conversations between co-defendant Bushawn Shelton and others, which contextualize contemporaneously coded text message conversations between Mr. Zottola's device and Shelton's device admitted in Government Exhibits 1209 and 1310.

  These coded messages are government's primary evidence against Mr. Zottola.  After three weeks of trial, where Mr. Zottola's alleged role in the charged conduct has been only hinted at, coded cellular telephone evidence remains the bulk of the government's evidence as to Mr. Zottola's relationship with Bushawn Shelton, who the government alleges orchestrated the attacks at issue in this trial.  The government is providing the jury with its interpretation of these coded messages by admitting a hand-picked selection of other messages that Shelton sent to alleged co-conspirators in the charged murder-for-hire, which explicitly discuss the murder plot.  The inference that the government asks the jury to draw is that because Shelton discussed murder with others while speaking in code with Mr. Zottola's device, those coded Zottola-Shelton messages must relate to murder as well.

  Admitting only the government's selection of Shelton's contemporaneous text message communications with his criminal confederates prevents the jury from acting as legitimate factfinders based on the actual universe of relevant communications.  The government, in effect, gets to cherry-pick what it believes is the meaning of the coded messages between Shelton-Zottola, and keep the jury from hearing other contemporaneous text messages that sound in other criminal conduct, such as drug dealing and robberies.  In other words, the government seeks to be the final arbiter of which of the criminal communications the jury is permitted to review.  In doing so, the government seeks a directed verdict— and a largely unjust one at that—because the jury never gets to know that Shelton and his criminal syndicate were conducting multiple criminal missions at the same time.  The only mission that the government seeks to introduce is the murder plot, which was ***not*** one in which Mr. Zottola knowingly

participated.  Mr. Zottola seeks to introduce evidence of Mr. Shelton's concurrent plots of narcotics distribution and robberies, which Mr. Zottola facilitated by giving Shelton access to stash houses and information about tenants.  Without allowing these other communications to be admitted alongside the violence-directed communications between Shelton and his gang members, the Court is effectively cutting off Mr. Zottola's defense at the knees.

For example, during Agent Zoufal's testimony on September 22, 2022, the government cross-referenced messages between the Shelton and Zottola devices (GX 1209) with messages between Shelton and a device subscribed to Herman Blanco (GX 1206), and then with Shelton and a device subscribed to Branden Peterson (GX 1311), among others.  *See* Tr. 4527:22-4534:5.  Indeed, the government has compiled over two dozen exhibits (the GX 100-series) of text messages integrating the Zottola-Shelton coded messages alongside Shelton's messages with other alleged co-conspirators to prove its theory of the coded messages.  Two such government exhibits have already been introduced into evidence.  *See* GX 100, 101.  Providing the jury with just a small subset of Shelton's criminally-aimed communications, with only a selected few of his prolific gang members, gives the jury only one possible view of the meaning of the Zottola-Shelton messages.  The jury should be permitted to be true fact-finders and determine for themselves what the meaning of the coded messages between Zottola and Shelton actually are.  In its current ruling, the Court is giving the jury only one side of the story.  In this construct, the jury can only read the coded messages in the context of the directives that Shelton is giving his violent crew, while omitting the fact that Shelton is also distributing drugs with confederates like Chris, Murda, and Hondo ***at the same time.***  Not showing this to the jury is directing them to conclude that the ***only*** communications that Shelton is having with his gang during the time he communicated with Mr. Zottola are about attacks on the Zottola family.  This presentation of the evidence distorts and disrupts the truth.[1]

Mr. Zottola's sets of proffered text messages by Shelton's gang are admissible for non-hearsay purposes.  First, they are admissible under Federal Rule of Evidence 106 for completeness.  The government's introduction of a cherry-picked selection of Shelton's gang messages contemporaneous with the Shelton-Zottola text messages provides a false narrative of Shelton's gang activities.  The defense should be permitted to show the jury the totality of what Shelton was directing his gang members to do at the same time he was communicating in code with Mr. Zottola's device.  The defense's proposed exhibits give the jury a fuller and more accurate representation of the universe of criminal communications that Shelton prolifically had with his confederates during the time he texted with Zottola's phone, which "in fairness ought to be considered at the same time" as the government's text message exhibits. Fed. R. Evid 106.  That Mr. Zottola's proposed exhibits contain Shelton's text messages with other individuals left out of the government exhibits does not preclude their admission for completeness.  Indeed, FRE 106 expressly contemplates admission of "any other writing or recorded statement — that in fairness ought to be considered at the same time."  *Id.*; *accord United States v. Shields*, 783 F. Supp. 1094, 1096 (N.D. Ill. 1991) (where government designated as trial exhibits only portions of select recordings, granting defendant's motion under FRE 106 to play the recorded conversations in full—including some that "the

---

[1] Attached as Exhibits A through F are an expanded set of Mr. Zottola's proposed exhibits, containing examples of Shelton's other communications contemporaneous with the text messages between Shelton's and Mr. Zottola's devices, which will provide the jury with competing context to deduce the true meaning of the Zottola-Shelton messages.

government has not designated even in part"— to "explain or place in context those which the government has designated" because "the excluded portion, although it may not bear directly upon the alleged conspiracy, tends to place the designated portion of the conversation in context and amplify upon the relationships among the defendants and Cooley . . . . For these reasons, and in the interest of affording the defendants and the jury a complete picture of the defendants' actions, the Court will order the tapes played in full in the government's case-in-chief."). Admitting only the government's selection of Shelton's messages with others will mislead the jury to believe that the messages introduced by the government are the only ones that can elucidate the meaning of the coded Zottola-Shelton messages. To avoid leaving the jury with that misapprehension, under FRE 106 Mr. Zottola should be permitted to introduce additional contemporaneous text messages between Shelton and his gang as alternative context for the coded Zottola-Shelton device communication. This is critical context for Mr. Zottola's defense theory that the code did not sound in murder, but rather other illegitimate business with Shelton, including drug dealing and inside information for robberies.

Second, Mr. Zottola's proposed exhibits are admissible as non-hearsay under FRE 801. Because they are being offered as interpretive context for the Zottola-Shelton messages—***not*** for the truth of their content in isolation—Mr. Zottola's proposed exhibits are not hearsay. *See* FRE 801(c)(2) (only out of court statements offered "to prove the truth of the matter asserted in the statement" excluded as hearsay); *United States v. Perez*, No. 05-CR- 441 (PKL), 2005 WL 2709160, at *2 (S.D.N.Y. Oct. 20, 2005) (admitting confidential informant's recorded out-of-court statements with a third party to contextualize the recorded statements of the defendant's co-conspirator "the informant's recorded statements will be offered for the limited purpose of placing in context [co-conspirator's] statements on the recordings. It is established that such recorded statements are properly admitted for this purpose . . . . Therefore, because they will not be offered to prove the truth of the matter asserted, the informant's recorded statements plainly are not hearsay") (citations omitted). The exchanges included in Mr. Zottola's proposed exhibits reflect that while Shelton and Mr. Zottola's device communicated in code, Shelton simultaneously carried on other business transactions not connected to a murder-for-hire plot, and which appear to correspond to the coded messages with Mr. Zottola. These further text messages provide competing context that does not fit the government's preferred interpretive theory. Introduction of Mr. Zottola's proposed exhibits, surrounding many coded texts between Mr. Zottola's and Shelton's devices, provide crucial context to facilitate Mr. Zottola's exculpatory interpretation of the coded messages at trial. Mr. Zottola's defense thus depends on introduction of these additional messages for this quintessential non-hearsay purpose.[2]

---

[2] Because the coded text messages are central to the government's case against Mr. Zottola, his ability to introduce co-extensive evidence contrary to the government's theory is necessary to permit him to mount a complete defense, necessitating their introduction here. *See, e.g., Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)); *United States v. Gilmore*, No. 19 CR. 724 (JGK), 2021 WL 4151009, at *2 (S.D.N.Y. Sept. 13, 2021) ("when it comes to the presentation of exculpatory evidence by a criminal defendant, ***the Constitution requires the admission of certain evidence***.") (emphasis added).

Hon. Hector Gonzalez
September 26, 2022
Page 4 of 4

---

      Accordingly, the Court should permit Mr. Zottola to admit Mr. Zottola's proffered exhibits, including conversations between co-defendant Bushawn Shelton and other gang members, which contextualize contemporaneous coded text message conversations between Mr. Zottola's device and Shelton's device.

      Respectfully submitted,

      /s/ IH
      Henry E. Mazurek
      Ilana Haramati

      *Counsel for Defendant Anthony Zottola*

cc:    Counsel of record (*via ECF*)