**MANDATE**

24-2101
*United States v. Snipe*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of December, two thousand twenty-five.

PRESENT:

>DENNY CHIN,
>RICHARD J. SULLIVAN,
>ALISON J. NATHAN,
>>*Circuit Judges*.

---

UNITED STATES OF AMERICA,

>*Appellee*,

v.                                                                                          No. 24-2101

BUSHAWN SHELTON, a.k.a. SHELZ, HERMAN BLANCO, a.k.a. TALIBAN, ARTHUR CODNER, a.k.a. FEDDI, a.k.a. FETTY, a.k.a. FEDDI BOSSGOD, a.k.a. FETTY BOSS, a.k.a.

**MANDATE ISSUED ON 02/17/2026**

SCARY, KALIK MCFARLANE, HIMEN ROSS, a.k.a. ACE, JASON CUMMINGS, a.k.a. THE HAT, a.k.a. STACKS, ALFRED LOPEZ, a.k.a. ALOE, BRANDEN PETERSON, a.k.a. B, a.k.a. MUR B, ANTHONY ZOTTOLA SR., a.k.a. ANTHONY ZOTTOLA,

        *Defendants,*

JULIAN SNIPE, a.k.a. BIZ, a.k.a. BIZZZY,

        *Defendant-Appellant.*[*]

_____

| | |
|---|---|
| **For Defendant-Appellant:** | INES MCGILLION, Ines McGillion Law Offices, PLLC, Putney, VT. |
| **For Appellee:** | ANDREW M. RODDIN (Amy Busa, Kayla C. Bensing, Devon E. Lash, Emily J. Dean, *on the brief*), Assistant United States Attorneys, *for* Joseph Nocella, Jr., United States Attorney for the Eastern District of New York, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Hector Gonzalez, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the August 2, 2024 judgment of the district

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

court is **AFFIRMED** in part and **VACATED and REMANDED** in part. The remainder of the appeal is **DISMISSED**.

Julian Snipe appeals from a judgment of conviction after pleading guilty to one count of murder-for-hire conspiracy ("Count One") and one count of substantive murder-for-hire ("Count Two"), both in violation of 18 U.S.C. § l958(a), for which he received a sentence of 240 months' imprisonment, followed by three years' supervised release. Snipe raises a host of challenges to his conviction and sentence, most of which the government contends were waived pursuant to the terms of the parties' plea agreement.[1] We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as needed to explain our decision.

---

[1] In particular, Snipe argues that (1) the district court erred in finding that the objects of the criminal conspiracy to which he belonged were the murders of Sylvester Zottola and Salvatore Zottola; (2) there was "insufficient evidence of guilt" to support his conviction for conspiracy to murder Sylvester Zottola, Snipe Br. at 9; (3) his conviction on Count Two was subject to a ten-year statutory maximum sentence; (4) the government breached the parties' plea agreement when it argued for a "serious sentence," *id.*; and (5) the special condition of his supervised release that prohibits him from associating with anyone affiliated with "organized crime groups, gangs[,] or any other criminal enterprise" (the "non-association condition"), PSR ¶ 128, is unconstitutionally vague and overbroad, infringes on his First Amendment rights to free speech and association, and represents an unconstitutional delegation to the Probation Office ("Probation"). In a motion to submit a supplemental letter brief, Snipe also contends that this Court's decision in *United States v. Maiorana*, 153 F.4th 306 (2d Cir. 2025) (en banc), requires vacatur of the thirteen standard conditions of his supervised release and a remand to the district court. We grant Snipe's motion and address his *Maiorana* claim on the merits below.

3

## I. Snipe Is Bound By His Plea Agreement, in Which He Waived All Challenges to His Conviction and Sentence.

The government contends that Snipe waived each of his appellate challenges – apart from those to his supervised-released conditions – by "knowingly and intelligently execut[ing] a valid waiver of his right to appeal any sentence of 480 months or less." Gov't Br. at 26. We agree.

Though we possess discretion "to correct errors that were forfeited because [they were] not timely raised in the district court," we have "no such discretion" where "there has been true waiver." *United States v. Spruill*, 808 F.3d 585, 596 (2d Cir. 2015) (emphases deleted) (citing Fed. R. Crim. P. 52(b)). And we have "recognized waiver where a party actively solicits or agrees to a course of action that he later claims was error." *Id.* at 597.

Here, Snipe signed a comprehensive appeal waiver relinquishing his right to challenge "the conviction or sentence in the event that the [district] [c]ourt impose[d] a term of imprisonment of 480 months or below." App'x at 110. At the outset of Snipe's guilty plea proceeding, the district court confirmed that Snipe had read the waiver and understood that he "agreed not to appeal or in any way challenge [his] sentence or conviction as part of [his plea] agreement." *Id.* at 100; *see also id.* at 71–72 (confirming that Snipe understood his rights). Following

4

Snipe's allocution and prior to accepting his guilty plea, the district court concluded that Snipe "act[ed] voluntarily" and "fully underst[ood] his rights . . . and [the] possible consequences of his pleas." *Id.* at 104–05. There is nothing, in other words, to substantiate Snipe's claim that "his plea was involuntary and unknowing." Snipe Br. at 22. To the contrary, Snipe pleaded guilty to two-lesser included offenses, thereby avoiding a potential life sentence under the five-count indictment. He is therefore "bound by his undertaking in the plea agreement," and the government is entitled to "the benefit of its bargain." *United States v. Yemitan*, 70 F.3d 746, 747–48 (2d Cir. 1995).

Snipe nonetheless contends that the appeal waiver is unenforceable because the government breached the plea agreement when it (1) opposed a reduction to his offense level for acceptance of responsibility under the advisory Sentencing Guidelines, and (2) "advocat[ed] for a 'serious sentence'" during the sentencing proceeding. Snipe Br. at 48 (capitalization altered) (quoting App'x at 345), 52. Because Snipe raised neither objection in the district court, we review for plain error. *See United States v. Taylor*, 961 F.3d 68, 81 (2d Cir. 2020). "To establish plain error, a defendant must demonstrate: (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Bleau*, 930 F.3d 35, 39 (2d Cir. 2019)

(internal quotation marks omitted). "If all three conditions are met, we will then exercise our discretion to rectify this forfeited error only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

To determine whether the government breached a plea agreement, we examine it "in accordance with principles of contract law," analyzing "what the parties reasonably understood to be the terms of the agreement." *United States v. Vaval*, 404 F.3d 144, 152 (2d Cir. 2005) (internal quotation marks omitted). Snipe's plea agreement stated that the government would "take no position concerning where within the Guidelines range determined by the [c]ourt [Snipe's] sentence should fall" and "make no motion for an upward departure under the Sentencing Guidelines." App'x at 111. The plea agreement also provided for a three-level reduction in offense level "[i]f [Snipe] clearly demonstrate[d] acceptance of responsibility, through allocution and subsequent conduct prior to the imposition of sentence . . . to the satisfaction of the [government]." *Id.* at 109–10. Prior to sentencing, however, Snipe moved to withdraw his guilty plea "multiple times," "assert[ing] actual innocence to his participation in the charged crimes." *Id.* at 382; *see id.* at 121 (Snipe: "I didn't help plot or carry out this conspiracy."). In

response, the government opposed the three-level reduction for acceptance of responsibility that the parties had contemplated in the plea agreement. The government ultimately recommended a 360-month sentence, which was at "the low end" of the Guidelines range "of 360 to 480 months' imprisonment estimated in the parties' plea agreement" but below the final Guidelines sentence of 480 months. *Id.* at 340, 387; *see also* U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.").

These facts are insufficient to support a finding that the government breached the plea agreement. For starters, the agreement expressly stated that the government would "advise the [c]ourt and the Probation Department of information relevant to sentencing," App'x at 109, and provided that the acceptance-of-responsibility reduction was only available "[i]f [Snipe] clearly demonstrates acceptance of responsibility . . . prior to the imposition of sentence," *id.* Snipe's claims of innocence – that he "didn't have any part of this [conspiracy]," *id.* at 119 – clearly contradicted any acceptance of responsibility. *See* U.S.S.G. § 3E1.1, Application Note 1(A) (to determine whether a defendant

7

qualifies for a sentencing reduction, "appropriate considerations" include "truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct"); *see also, e.g., United States v. Beltre*, 562 F. App'x 15, 19 (2d Cir. 2014) ("[A] post-plea disavowal of guilt may be treated as inconsistent with acceptance of responsibility.").

Similarly, the government's agreement not to take a "position concerning where within the Guidelines range determined by the [c]ourt the sentence should fall," App'x at 111, was premised "upon information *now known* to the [U.S. Attorney's] Office," *id.* (emphasis added). But that bargain was struck *before* Snipe asserted his innocence and attempted to withdraw his guilty plea – actions that clearly undercut Snipe's acceptance of responsibility. Put differently, these "new justifying facts," far from "involv[ing] bad faith" on the government's part, expressly lend support to its argument that the sentencing reduction should not apply. *United States v. Habbas*, 527 F.3d 266, 271 (2d Cir. 2008). By advocating for a 360-month sentence – the *lowest* sentence contemplated by the plea agreement and a full ten years *below* the range ultimately settled on by the district court – the government did not "deprive[] Mr. Snipe of his bargain." Snipe Br. at 52.

8

In any event, even if Snipe could demonstrate that the government breached the plea agreement, he fails to demonstrate plain error. *See Bleau*, 930 F.3d at 39. Though the plea agreement stipulated that the "effective Guidelines range of imprisonment is 360–480 months," App'x at 110, that range was premised on Snipe demonstrating acceptance of responsibility. Given his subsequent conduct and the district court's denial of a reduction for acceptance of responsibility, the court, Probation, and the parties agreed that the applicable Guidelines range was 480 months – the statutory maximum for the two stacked counts of conviction. *See id.* at 387. The district court then sentenced Snipe to 240 months' imprisonment, emphasizing that "[it] would have imposed the same sentence on [Snipe] even had [it] found that he was entitled to the two-[level] acceptance of responsibility adjustment." *Id.* at 420.[2]  It bears noting that the two-level reduction would have reduced Snipe "to an offense level of 43," which would still have resulted in an "advisory range of life [imprisonment]" capped at the statutory maximum of 480 months. *Id.* at 420–21. Thus, any breach of the plea agreement by the government did not "affect[] the outcome of the district court proceedings."

---

[2] The plea agreement contemplated a two-level reduction in offense level committed to the court's discretion, with an additional one-level reduction "if [Snipe] has accepted responsibility . . . to the satisfaction of the [government]." App'x at 109–10.

*Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation marks omitted); *see also United States v. Arigbodi*, 924 F.2d 462, 464 (2d Cir. 1991) (underscoring that a district court does not commit plain error where a "defendant could have received exactly the same sentence in the absence of the alleged error").

In sum, Snipe waived the challenges to his conviction and sentence by pleading guilty, and we reject his arguments that the government breached the plea agreement.[3]

## II. The District Court Did Not Err in Imposing the Non-Association Condition.

Snipe next asserts that Special Condition #1 of his supervised release (the "non-association condition") – which prohibits him from associating with criminally-linked individuals and organizations and from visiting certain places –

---

[3] In the lead-up to oral argument, Snipe filed a letter pursuant to Federal Rule of Appellate Procedure 28(j) citing ongoing merits briefing in the Supreme Court to challenge this Circuit's precedent in *United States v. Fisher*, 232 F.3d 301, 304 (2d Cir. 2000) (holding "that an otherwise enforceable waiver of appellate rights is not rendered ineffective by a district judge's post-sentencing advice suggesting, or even stating, that the defendant may appeal").  *See* Snipe Dec. 10, 2025 Rule 28(j) Letter at 1.  Snipe also contends that the government "forfeited and/or waived its ability to enforce the appeal waiver or restrict Mr. Snipe's appellate rights to a greater degree than that articulated by the sentencing judge" in light of the pending Supreme Court litigation. *Id.* at 2.  But it is well established that a party "is strictly forbidden from making additional arguments or from attempting to raise points clarifying its brief or oral argument" in Rule 28(j) submissions.  *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987); *see also Poor v. Amazon.com Servs. LLC*, 104 F.4th 433, 444 n.10 (2d Cir. 2024) (argument made "for the first time in a Rule 28(j) letter" was "forfeited").  Because Snipe attempts to do just that –the day before argument, no less – we do not consider the arguments and briefing referenced in his Rule 28(j) letter.

10

(1) "infringes on [his] First Amendment right to free speech and association"; (2) is impermissibly "vague and overbroad"; and (3) "unconstitutionally delegates to U.S. Probation" the ability to set the terms of his supervised release. Snipe Br. at 53–55. He also contends that the district court erred by not pronouncing the non-association condition at sentencing. Unlike the other arguments raised on appeal, this challenge is not covered by the appeal waiver in the plea agreement, and so we address it on the merits.

"District courts possess broad discretion in imposing conditions of supervised release," *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018), which we review "for abuse of discretion," *United States v. Parkins*, 935 F.3d 63, 65 (2d Cir. 2019). To set conditions of supervised release, courts may consider conditions "reasonably related" to "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed to afford adequate deterrence to criminal conduct"; and "the need to protect the public from further crimes of the defendant." *Betts*, 886 F.3d at 202 (quoting U.S.S.G. § 5D.3(b)); *see also* 18 U.S.C. § 3583(d). Finally, "[w]e have upheld probation conditions that restrict a person's liberty" so long as those conditions "bear a reasonable relation to the crime of which the defendant stands convicted,"

*United States v. Schiff*, 876 F.2d 272, 276 (2d Cir. 1989), and are "adequately explained" and "supported by the record," *United States v. Sims*, 92 F.4th 115, 119 (2d Cir. 2024).

To begin, Snipe concedes that he neither objected to the non-association condition itself, nor to the way it was pronounced at sentencing, and so we review for plain error.  Given Snipe's acknowledged association with the "Gorilla Stone set of the Bloods" street gang, Sealed App'x at 56 (quoting PSR ¶ 8), we cannot say that the district court plainly erred in imposing a condition that barred him from "associat[ing] with other individuals engaged in criminal activity or gang activity," App'x at 422.  As the district court explained, Snipe's "interactions with gang members" caused him "to be pulled into the orbit of th[e] conspiracy."  *Id.* at 423.  It was therefore reasonable for the district court to conclude that the non-association condition would "mitigate th[e] risk" of further entanglements with criminal conduct and was thus "appropriate under the[] circumstances."  *Id.*  In short, the "district court's reason for imposing such a condition is self-evident based on the record," *United States v. Arguedas*, 134 F.4th 54, 71 (2d Cir. 2025), and "reasonably related" to both (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," and (2) "the need to protect the

12

public from further crimes of the defendant," *Betts*, 886 F.3d at 202 (quoting U.S.S.G. § 5D1.3(b)).

To the extent that Snipe challenges the non-association condition as "unconstitutionally vague and overbroad," Snipe Br. at 55, we have often "rejected vagueness and overbreadth challenges to [similar] non-association conditions," *Sims*, 92 F.4th at 125 n.6; *see also, e.g.*, *United States v. Green*, 618 F.3d 120, 123–24 (2d Cir. 2010) ("The statutory background of the federal criminal law gives the phrase 'criminal street gang' provision a constitutionally sufficient foundation, and this part of the condition is therefore not unconstitutionally overbroad."); *United States v. Marshall*, 808 F. App'x 11, 12–14 (2d Cir. 2020) (upholding a supervised-release condition "not to associate with any member, associate[,] or prospect of any criminal gang, club[,] or organization" (internal quotation marks omitted)); *United States v. Rakhmatov*, No. 21-151, 2022 WL 16984536, at *3 & n.1 (2d Cir. Nov. 17, 2022) (similar); *United States v. MacMillen*, 544 F.3d 71, 74–76 (2d Cir. 2008) (upholding a bar on "frequenting locations where children are likely to congregate" (internal quotation marks omitted)). As we have explained, "[c]onditions need not be cast in letters six feet high, or describe every possible permutation, or spell out every last, self-evident detail." *United States v. Reeves*,

13

591 F.3d 77, 81 (2d Cir. 2010) (alteration rejected, ellipses and internal quotation marks omitted).

We also reject Snipe's assertion that the "special condition unconstitutionally delegates to U.S. Probation the sentencing authority to further develop a 'prohibition list'" restricting the people with whom Snipe could associate and the places he could visit. Snipe Br. at 55. Though district courts may not delegate the "decisionmaking authority which would make a defendant's liberty *itself* contingent on a probation officer's exercise of discretion," they "may delegate to a probation officer decisionmaking authority over certain minor *details* of supervised release." *United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015) (emphases added). Restrictions on associating with "individual[s] with an affiliation to any organized crime groups, gangs[,] or any other criminal enterprise," Sealed App'x at 76 (quoting PSR ¶ 128), "are properly understood as matters of detail" within Probation's purview, *United States v. Kunz*, 68 F.4th 748, 766 (2d Cir. 2023). After all, "sentencing judge[s] cannot reasonably be expected to compile a detailed list" of prohibited persons and places. *Id.* Particularly on plain-error review, Snipe's challenge fails.

14

Finally, Snipe's argument that the conditions of his supervised release "were not pronounced at sentencing" is belied by the record. Snipe Br. at 54. Though the district court did not read the non-association condition verbatim, "adequate[]" explanation of such conditions does not require a full recitation. *Sims*, 92 F.4th at 119; *see also United States v. Maiorana*, 153 F.4th 306, 314 (2d Cir. 2025) (en banc) ("A sentencing court need not read the full text of every condition on the record."). Indeed, we have consistently concluded that district judges fulfill their sentencing-pronouncement requirements through "summary" reference to conditions in other charging documents, including the PSR. *See, e.g.*, *United States v. Washington*, No. 22-688, 2024 WL 2232464, at *1–2 (2d Cir. May 17, 2024), *cert. denied sub nom. Alexander v. United States*, 145 S. Ct. 330 (2024); *United States v. Whitaker*, No. 21-1543, 2023 WL 5499363, at *4 (2d Cir. Aug. 25, 2023). Here, the district court went out of its way to highlight that the "non-association condition" meant that "[Snipe] cannot associate with other individuals engaged in criminal activity or gang activity," and to explain why that was necessary. App'x at 422 (internal quotation marks omitted). Probation also included the condition in its PSR and in its sentencing recommendation, and the court directed Snipe and

15

his counsel to those materials at sentencing, mitigating any notice concerns. *Cf. Maiorana*, 153 F.4th at 314.

### III. Our Decision in *Maiorana* Requires Vacatur of the Standard Conditions of Snipe's Supervised Release and a Remand to the District Court.

Snipe further contends that our decision in *United States v. Maiorana* – issued after sentencing occurred in this case – requires vacatur of the thirteen standard conditions of his supervised release and a remand to the district court to determine whether to reimpose them. In *Maiorana*, we held that "a sentencing court intending to impose non-mandatory conditions of supervised release, including the 'standard' conditions described in [U.S.S.G.] § 5D1.3(c), must notify the defendant during the sentencing proceeding; if the conditions are not pronounced, they may not later be added to the written judgment." *Id.* at 314; *see also id.* at 314 n.11 (applying this "new rule of criminal procedure" to "cases currently on direct review").[4]

Here, given the state of the law at the time, the district court neither pronounced Snipe's standard conditions of supervised release listed in the judgment at sentencing, nor "specifically incorporate[d] by reference particular

---

[4] Although we decided *Maiorana* on August 28, 2025, Snipe's counsel waited, inexplicably, until December 9, 2025 – three months and eleven days after *Maiorana*, and a mere two days before oral argument – to file a motion to supplement the briefing in this case.

16

conditions that ha[d] been set forth in writing and made available to [Snipe]." *Id.* at 314. The government has conceded error and agreed that a remand is appropriate. Though "[t]his Court, of course, is not bound to accept the Government's concession that the courts below erred on a question of law," *Orloff v. Willoughby*, 345 U.S. 83, 87 (1953) (Jackson, J.), we agree that vacatur of Snipe's standard conditions of supervised release is appropriate to ensure that he is "afforded the constitutionally grounded protections encompassed by the right to be present at sentencing," *Maiorana*, 153 F.4th at 314. On remand, the district court should address the standard conditions of Snipe's supervised release in accordance with the procedures laid out in *Maiorana*.

\* \* \*

Accordingly, we **AFFIRM** the imposition of Special Condition #1 of Snipe's supervised release, **DISMISS** Snipe's additional challenges to his conviction and sentence raised in the merits briefing pursuant to the appeal waiver in his plea agreement, and **VACATE** the imposition of the thirteen standard conditions of his supervised release. The case is **REMANDED** to the district court for further proceedings.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court